# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# COURT FILE NO.: 17-cv-4164

| | |
|---|---|
| Jane Doe,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Minnesota Department of Public Safety; Minnesota Department of Public Safety Does (1-10); Kathy Daley, in her individual and official capacity; and Kim Jacobson, in her individual and official capacity,<br><br>　　　　　　Defendants. | **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.　Plaintiff Jane Doe (herein "Plaintiff") brings this action pursuant to the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 et seq., and Minnesota common law invasion of privacy.

2.　This is a case about a woman living in fear who has done everything in her capacity to protect both her and her daughter from her ex-husband (hereinafter "Ex-Husband"), one of America's most wanted men.

3.　In August of 1988, Plaintiff and Ex-Husband were married.

4.　Over the course of that marriage, on several occasions, Ex-Husband beat Plaintiff nearly to death.

5.　Plaintiff feared that one day, Ex-Husband would kill her.

6.　 Plaintiff knew that the only way for her to survive was to escape.

1

7.  In May of 1999, Plaintiff divorced Ex-Husband.

8.  Knowing that Ex-Husband would attempt to seek revenge, Plaintiff shed her old identity and assumed a new one.

9.  After due consideration of the immense danger Plaintiff would be in if she were ever found by Ex-Husband, the court took the extraordinary measure of sealing the related files and records.

10. After adopting her new identity, Plaintiff necessarily relied upon agents of Defendant Minnesota Department of Public Safety (hereinafter "Defendant DPS"), Kathy Daley (hereinafter "Defendant Daley"), supervisor of the issuing department, Kim Jacobson (hereinafter "Defendant Jacobson"), Data Practices Program Administrator, and others whose identities are currently unknown to protect her by keeping her previous identity wholly separate from her assumed identity within Department of Vehicle Services ("DVS") database so as to prevent Ex-Husband or any of his associates from using Plaintiff's previous identity to ascertain her assumed identity.

11. Devastatingly, such was not done and, instead, Plaintiff remained inextricably linked to her old identity.

12. As a result, Ex-Husband was able to obtain Plaintiff's assumed identity.

## JURISDICTION

13. Jurisdiction of this Court is proper pursuant to 18 U.S.C. § 2724 and 28 U.S.C. § 1331.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District and Plaintiff, Defendants reside in this District.

## PARTIES

15. Plaintiff Jane Doe is and was at all times material herein, a citizen of the United States of America and a resident of the State of Minnesota.

16. Defendant Minnesota Department of Public Safety (hereinafter "Defendant DPS") is an agent of the State of Minnesota as designated by the Minnesota Legislature at Minn. Stat. § 15.01. Defendant DPS is a "government entity" as defined by Minn. Stat. § 13.02 subd. 7a. The Minnesota Legislature expressly authorized suit against Defendant DPS in this Court at Minn. Stat. § 13.08 subd. 1.

17. Defendant Minnesota Department of Public Safety Does (1-10) (hereinafter "Defendants DPS Does") are employees, agents, and contractors of Defendant DPS.

18. Defendant Daley is and was at all times material herein, a citizen of the United States of America and a resident of the State of Minnesota. Pursuant to Minn. Stat. § 13.02 subd. 16(a) and Minn. Admin. R. § 1205.0200 subp. 13, Defendant Daley has been the "responsible authority" for the collection, use, and dissemination of any set of government data by Defendant DPS.

19. Defendant Jacobson is and was at all times material herein, a citizen of the United States of America and a resident of the State of Minnesota. Pursuant to Minn. Stat. § 13.02 subd. 16(a) and Minn. Admin. R. § 1205.0200 subp. 13, Defendant Jacobson has been the "responsible authority" for the collection, use, and dissemination of any set of government data by Defendant DPS.

## HISTORY AND FRAMEWORK OF THE DPPA

20. Security and privacy is highly valued in the United States, and the right to be secure in one's person is codified in the Bill of Rights. U.S. Const. amend. IV.

21. Prior to the passage of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 et seq., state's departments of motor vehicles had been jeopardizing the privacy of citizens by giving out, or selling for a nominal fee, the names and home addresses of individuals. 139 Cong. Rec. E2747-48 (Nov. 3, 1993) (statement of Rep. Moran).

22. The main purpose of the statute was to prevent incidences of stalking and violence enabled by access to personal information that is stored by motor vehicle registries. See e.g. Protecting Driver Privacy: Hearing on H.R. 3365, the Driver's Privacy Protection Act of 1993, Before the Subcomm. on Civil and Const. Rights of the H. Comm. on the Judiciary, 103d Cong. (1994) (statement of Rep. James P. Moran); 140 Cong. Rec. H2, 526–27 (daily ed. Apr. 20, 1994) (statement of Rep. Porter Goss) (noting that "the intent of the bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their pray before another tragedy occurs").

23. The DPPA solved these problems by "establish[ing] a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Id.* at 7, *citing Reno v. Condon*, 528 U.S. 141, 144 (2000).

24. The DPPA contains a list of exceptions to the aforementioned consent requirement; these exceptions primarily concern information disclosures in connection with public safety, the function of government agencies, and litigation. Katherine Hutchison, *That's*

*the Ticket: Arguing for a Narrower Interpretation of the Exceptions Clause in the Driver's Privacy Protection Act.* 7 Seventh Circuit Rev. 126, 127 (2012).

25. From its original enactment in 1994, The DPPA has provided for a private civil remedy and liquidated damages to citizens whose privacy is invaded by unlawful acquisitions of their personal information from a state motor vehicle record. 18 U.S.C. § 2724.

## FACTUAL ALLEGATIONS

26. On November 17, 1998, Ex-Husband viciously attacked Plaintiff in their home with their daughter present and told her that "if [he] c[ould]n't have [her], no one else [could] either" and "You can live in fear wondering if I am dead or alive"; Plaintiff was medically treated for her injuries.

27. In May of 1999, Plaintiff's divorce from Ex-Husband was finalized.

28. In March of 2000, Ex-Husband was convicted of 3rd Degree Felony Assault for causing Plaintiff such substantial bodily harm; Ex-Husband was sentenced to 5 years in prison as a result of his actions but was granted a stay of imposition so long as he successfully completed probation and treatment.

29. On April 28, 2000, Plaintiff petitioned the Dodge County Court to have her name changed.

30. On July 6, 2000, Plaintiff's Petition for Name Change was granted and, for Plaintiff's safety, the Court ordered that all related files and records be sealed.

31. In July of 2000, Plaintiff completed the appropriate paperwork with DVS and was issued a new driver's license.

32. In August of 2000, Ex-Husband violated his probation and a body only warrant was issued for his arrest; Ex-Husband was then deemed a fugitive of the law.

33. In August of 2000, Plaintiff completed the appropriate paperwork and was issued a new social security number.

34. In October of 2006, Plaintiff and her daughter relocated to Kasson, MN.

35. In the summer of 2007, Ex-Husband was sighted in Kasson, MN.

36. In the summer of 2007, Plaintiff and her daughter relocated to Coon Rapids, MN.

37. In October of 2009, Officer Scott Rose (herein "Officer Rose") sent Plaintiff a letter asking Plaintiff to contact him regarding Ex-Husband's warrant file.

38. Sometime thereafter, after Plaintiff inquired, Officer Rose told Plaintiff that he had found her by accessing Plaintiff's previous identity within the DVS databank as Plaintiff's two identities remained connected.

39. As part of his investigation, Officer Rose disseminated information about Plaintiff to Assistant Prosecuting Attorney Gary ReMine, the Bureau of Criminal Apprehension, the Federal Bureau of Investigation, and the Coon Rapids Police Department.

40. Sometime after Officer Rose told Plaintiff how he ascertained her assumed identity, Plaintiff contacted DPS and notified them that her previous identity and her assumed identity were linked to one another in the DVS database, that such was impermissible in light of the Dodge County Court's order, and that her security was being greatly jeopardized as a result; however, the DVS databank was not corrected.

41. In December of 2009, Plaintiff was attacked by a man sent by Ex-Husband to harm her; Plaintiff reported this attack to the Coon Rapids Police Department.

42. On February 20, 2010, Ex-Husband appeared on an episode of America's Most Wanted.

43. Throughout 2010, Plaintiff received threatening phone calls that, upon information and belief, were from Ex-Husband.

44. Ex-Husband attacked Plaintiff on May 24, 2011, June 18, 2011, and again on January 30, 2013; Plaintiff was hospitalized for her injuries after each attack.

45. Plaintiff filed numerous police reports under her previous identity from 2009 to 2010 regarding Ex-Husband; each time, Plaintiff requested that her information remain confidential.

46. In the fall of 2012, Plaintiff contacted the Community Oriented Policing and Problem Solving ("COPPS") division of the Coon Rapids Police Department after Donna, an employee of Colonial Estates, had told Plaintiff that the Coon Rapids Police Department routinely faxed copies of Plaintiff's police reports to Colonial Estates.

47. Plaintiff spoke with Officer Bill Michaels; Officer Michaels confirmed to Plaintiff that he had provided copies of police reports she had filed under both her previous identity and her assumed identity to Plaintiff's then apartment manager, Kim Nielsen.

48. In March through July of 2016, Ex-Husband stalked Plaintiff on at least two occasions, called Plaintiff incessantly, and left a threatening note upon the windshield of Plaintiff's vehicle.

49. On June 29, 2016, Ex-Husband attacked Plaintiff and caused her to seek medical treatment.

50. In October of 2016, Plaintiff filed a petition to the Anoka County Court for an order of protection against Ex-Husband.

51. On October 18, 2016, Defendant Jacobson provided Plaintiff a listing of who had accessed Plaintiff's driver's license records since June 1, 2008; the listing included 35 separate inquiries.

52. In November of 2016, Plaintiff and her daughter left their home in Coon Rapids, MN and moved to Columbia Heights, MN.

53. In November of 2016, Ex-Husband called Plaintiff on at least two separate occasions to threaten her life.

54. At one point in 2016, Plaintiff spoke with Defendant Jacobson and Defendant Jacobson assured Plaintiff that she would "break the link" in the DVS database between Plaintiff's previous identity and her assumed identity.

55. In that same conversation in 2016, Defendant Jacobson remarked, "I can't believe she put it in that way."

56. On January 4, 2017, Ex-Husband attacked Plaintiff.

57. In February of 2017, Plaintiff received a threatening letter from Ex-Husband.

58. In February of 2017, the Anoka County Court granted Plaintiff's petition for an order of protection.

59. In February through March of 2017, Plaintiff received numerous threatening phone calls from Ex-Husband.

60. On March 27, 2017, Ex-Husband attacked Plaintiff at her home in her garage; while in the hospital for her injuries, Plaintiff spoke to a nurse, Kimberly Farley. Plaintiff informed

Ms. Farley that she was a special victim and, accordingly, Plaintiff could not provide her assailant's name.

61. Plaintiff then informed Ms. Farley that the Columbia Heights Police Department had been notified of the incident.

62. Ms. Farley then stepped into the hall and placed a call to the Columbia Heights Police Department.

63. While on the phone, an officer conveyed to Ms. Farley Plaintiff's previous identity, Ex-Husband's identity, and that Ex-Husband was the assailant.

64. In April and May of 2017, Plaintiff received more threatening letters from Ex-Husband.

65. On May 29, 2017, Ex-Husband's associate attacked Plaintiff at her home.

66. On June 3, 2017, Ex-Husband's associate attacked Plaintiff and told her that "the plan was being implemented" and that he would "finish it" and her.

67. On June 4, 2017, Plaintiff was taken to the hospital in an ambulance for the injuries she sustained the previous day.

68. On June 28, 2017, Plaintiff spoke with Defendant Daley; Defendant Daley outlined the policies and procedures in place relating to name changes.

69. Defendant Daley told Plaintiff that had the policy been followed, the records associated with her previous identity would have been completely removed from the database and, instead, stored in hard copy only, and a new record associated with her assumed identity would be adopted.

70.     As part of that same conversation on June 28, 2017, Defendant Daley informed Plaintiff that she would take the requisite corrective measures; she would erase from the DVS database all references to Plaintiff's previous identity and would issue Plaintiff a new driver's license, one unaffiliated with her previous identity.

71.     Later in that conversation on June 28, 2017, Defendant Daley remarked to Plaintiff that she was "glad that she wasn't the one who had done it" but assured Plaintiff that the individual who had done so no longer worked at DPS.

72.     On June 29, 2017, Defendant Daley called Plaintiff and told Plaintiff that she had taken the requisite measures and had issued and mailed Plaintiff a new driver's license.

73.     In July of 2017, Plaintiff received several threatening letters from Ex-Husband, each accompanied by a dead rodent.

## TRIAL BY JURY

74.     Plaintiff is entitled to, and hereby demands, a trial by jury.  U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### THE DRIVER'S PRIVACY AND PROTECTION ACT

### 18 U.S. Code § 2721, *et seq.* ("DPPA")

75.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.     Plaintiff provided personal information to the DPS for the purpose of acquiring a new State of Minnesota driver's license.

77. Defendants were barred from disclosing any of Plaintiff's personal information for any purpose pursuant to court order.

78. Knowingly disclosing personal information for an impermissible purpose is a violation of the DPPA. The statute provides for criminal fines and civil penalties. 18 U.S.C. §§ 2723, 2724.

79. Defendants willfully and recklessly disregarded the law. Accordingly, Plaintiff is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. § 2724(b).

80. Additionally, Plaintiff is entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA. 18 U.S.C. § 2721(b)(1). Plaintiff need not prove actual damages to receive said liquidated damages.

## COUNT II.

## COMMON LAW INVASION OF PRIVACY

81. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully stated herein.

82. By improperly disclosing Plaintiff's personal information, Defendants intentionally intruded upon the solitude or seclusion of Plaintiff's private affairs and concerns.

83. Defendants' intrusions would be highly offensive to a reasonable person.

84. Defendants' intrusions caused Plaintiff to suffer substantial physical and emotional harm, and were made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

85. Plaintiff is entitled to tort damages for Defendants' invasion of privacy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants as follows:

- Awarding statutory, actual, and punitive damages for violation of the DPPA pursuant to 18 U.S.C. § 2724;
- Awarding costs and reasonable attorney's fees for violation of the DPPA pursuant to 18 U.S.C. § 2724
- Awarding actual and compensatory damages for invasion of privacy pursuant to Minnesota common law in an amount to be determined at trial;
- Such other relief as the Court determines to be appropriate.

Dated this 6th day of September, 2017.

By: s/Thomas J. Lyons Jr.

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #:  0249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:  (651) 704-0907
tommy@consumerjusticecenter.com

***ATTORNEY FOR PLAINTIFF***