UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-4164(DSD/DTS)

Jane Doe,

    Plaintiff,

v.                                                **ORDER**

Minnesota Department of
Public Safety Does (1-10),
in their individual capacities;
Kathy Daley, in her individual
capacity; and Kim Jacobson,
in her individual capacity,

    Defendants.

    Katelyn Rae Cartier, Consumer Justice Center, P.A., 367 Commerce Court, Vadnais Heights, MN 55127, counsel for plaintiff.

    Jeffrey Kent Boman, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendants Kathy Daley and Kim Jacobson. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This privacy dispute arises out of plaintiff Jane Doe's ongoing efforts to escape the threats and abuse of her ex-husband. Doe divorced her husband in 1999 after suffering years of physical abuse. Am Compl. ¶¶ 3-7, 26-27. In March 2000, Doe's ex-husband

was convicted of assaulting her and sentenced to five years' imprisonment; however, he was granted a stay of imposition provided that he remain law abiding and successfully complete treatment. Id. ¶ 28. In July 2000, the Dodge County Court granted Doe's request to change her name so that she and her daughter could be safe from her ex-husband. Id. ¶¶ 29-30. The court ordered all documents in the matter sealed. Id. ¶ 30. Soon thereafter, the state issued Doe a driver's license under her new name. Id. ¶¶ 31-32. The federal government also issued her a new social security number. Id. ¶ 34. In the meantime, a warrant was issued for Doe's ex-husband's arrest following an undisclosed probation violation. Id. ¶ 33. It appears that he remains a fugitive.

In October 2009, a police officer contacted Doe by letter in an effort to locate her ex-husband. Id. ¶ 38. Doe asked the officer how he found her address. Id. ¶ 39. He responded that her contact information was available on the Department of Vehicle Services (DVS) database.[1] Id. Doe then contacted the Department of Public Safety (DPS) to complain that her previous and assumed names were linked in the database in violation of the Dodge County order, but she alleges that nothing was done to correct the problem. Id. ¶ 42. Thereafter, between December 2009 and July 2017, Doe has been physically attacked several times either by her

---

[1] DPS makes drivers' motor vehicle records available to law enforcement officers through the DVS database.

ex-husband or his associates, has been stalked, and has received numerous threatening phone calls and letters.[2]  Id. ¶¶ 43, 45-46, 50-51, 55, 61-62, 64-65, 69-71, 81.

Doe vaguely alleges that the link between her names in the database "otherwise made [her identity] available" to her ex-husband.  Id. ¶ 60.  She does not allege, however, that either her ex-husband or his associates have direct or indirect access to the DVS database or that the law enforcement officials who accessed her data communicated her location to her ex-husband or his associates or otherwise used the data for an improper purpose.

In October 2016, Doe requested an audit from DPS to determine who had accessed her DVS motor vehicle record since June 1, 2008.  Id. ¶ 53.  The audit showed that the record had been accessed 43 times between October 4, 2009, and October 14, 2016, by various sheriff's and police departments and unidentified DVS users.  Id.  Doe then spoke with Defendant Kim Jacobson, the DPS data practices program administrator, regarding the audit and expressed concern that her previous and assumed identities were still linked in the database.  Id. ¶¶ 10, 53, 56.  Jacobson assured Doe that she would "break the link" between Doe's two identities and expressed surprise that they were still connected.  Id. ¶¶ 56-57.  Despite this assurance, Doe alleges that her identities remained linked.

---

[2]  Doe has two orders of protection in place, neither of which appear to deter her ex-husband.  Id. ¶¶ 52, 63.

Id. ¶ 58.

On June 28, 2017, Doe contacted defendant Kathy Daley, supervisor of the DPS issuing department, about her DVS record. Id. ¶ 73. Daley explained that Doe's previous and assumed identities should never have been linked and told Doe that she would erase all reference to Doe's previous identity in the DVS database and issue her a new driver's license unaffiliated with her previous identity. Id. ¶¶ 74-75. Doe received a new license, but she alleges that her identities remain linked in the DVS database. Id. ¶¶ 77-78.

After commencing this suit on September 7, 2017, Doe filed an amended complaint under seal on December 1, 2017, alleging that Jacobson, Daley, and unnamed DPS employees violated the Driver's Privacy Protection Act (DPPA) by maintaining a link between her previous and assumed identities. She also alleges that defendants' acts and/or omissions constitute invasion of privacy under Minnesota law. Defendants now move to dismiss.

### DISCUSSION

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)

4

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

## II. DPPA

Doe asserts a claim against all defendants, known and unknown, for violations of the DPPA. The DPPA provides that "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information,[3] from a motor vehicle record, for any use not permitted under section 2721(b)[4] of this title." 18 U.S.C. § 2722.

---

[3] The DPPA defines "personal information" as including "an individual's photograph, social security number, driver identification number, name, address ..., telephone number, and medical or disability information." 18 U.S.C. § 2725(3).

[4] Section 2721(b) provides that permissible uses include, but are not limited to: court and law enforcement functions, motor vehicle or driver safety or monitoring, certain conduct of legitimate businesses, research activities, production of statistical reports, insurance-related purposes, private investigative agency or security service activities, and bulk distribution of surveys and marketing materials. 18 U.S.C. § 2721(b).

5

Under the DPPA, any "person[5] who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." Id. § 2724(a). Doe alleges that Daley, Jacobson, and unidentified employees of DPS violated the DPPA by failing to decouple her previous and assumed identities in the database. This claim fails as a matter of law for two fundamental reasons.

First, the amended complaint does not allege that Daley or Jacobson (or any Doe defendant for that matter) knowingly obtained, disclosed, or used Doe's personal information from her DVS record. To the contrary, Doe simply alleges that Daley and Jacobson failed to decouple her identities when the error was brought to their attention. At most, then, Doe asserts that they were negligent in allowing the information to continue to be made available on the DVS database. Doing so does not constitute obtaining, disclosing, or using under the statute.

This court has made clear that the DPPA does not impose liability on one who indirectly facilitates another's access of a motor vehicle record by maintaining an electronic database. Nelson v. Jesson, No. 13-340, 2013 WL 5888235, at *3 (D. Minn. Nov. 1, 2013); see also Kiminski v. Hunt, Nos. 13-185, 13-208, 13-286, 13-

---

[5] A "person" includes "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725(2).

358, 13-389, 2013 WL 6872425, at *9 (D. Minn. Sept. 20, 2013) ("But the provision[s of the DPPA] may not be stretched to the point of rewriting ... so [that the statute] reaches others at a state agency who gave the officer database access for a legitimate purpose, merely because they did so in a negligent manner."); McDonough v. Al's Auto Sales, No. 13-1889, 2014 WL 683998, at *3 (D. Minn. Feb. 21, 2014), rev'd in part on other grounds by 799 F.3d 931 (8th Cir. 2015) (same).  Nor does the DPPA expressly create a private right of action for mismanagement of records, and the court declines to recognize one here.  See Kiminski, 2013 WL 6872425, at *9 (observing that, unlike the DPPA, the Internal Revenue Code explicitly allows private damages claims for negligent disclosures of confidential information).

Second, and crucially, Doe does not allege that any defendant used her data for an impermissible purpose.  To the contrary, Doe acknowledges that law enforcement officers did not misuse the data. Hr'g Tr. at 11:21-23.  And her counsel conceded that Doe is "not alleging that there is an impermissible use [of the data.]" Id. at 13:13-14.  She does not even allege that her ex-husband directly or indirectly accessed her data through the database.  Indeed, there appears to be no causal link between her continued abuse and the content of her DVS record.  Because impermissible purpose is a necessary element to a private right of action under the DPPA, Doe fails to state a claim under the statute.

The court understands the difficult position plaintiff is in and sympathizes with her, but the DPPA does not provide her with relief. The court nevertheless trusts that the DPS has already remedied the situation so that Doe may have some peace of mind.

### III. State-law Claim

Because the court has dismissed Doe's federal claim, the only claim for which original jurisdiction existed, the court must consider whether to exercise supplemental jurisdiction over the remaining state-law claim for invasion of privacy. See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (quoting Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 n.7 (1988)); see also Kapaun v. Dziedzic, 674 F.2d 737, 739 (8th Cir. 1982) ("The normal practice where federal claims are dismissed prior to trial is to dismiss pendent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts.").

Based on consideration of the pendent jurisdiction factors, the court will not exercise supplemental jurisdiction over the state-law claim for invasion of privacy.  The remaining claim depends solely on determinations of state law.  See Farris v. Exotic Rubber and Plastics of Minn., Inc., 165 F. Supp. 2d 916, 919 (D. Minn. 2001) ("State courts, not federal courts, should be the final arbiters of state law.") (quoting Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997)).  Further, the parties have yet to engage in discovery, and the court has not expended substantial resources tending to this matter.  Under the circumstances, the court is satisfied that declining to exercise supplemental jurisdiction will not harm the parties.  The court dismisses the state-law claim without prejudice.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 23] is granted;
2. The DPPA claim is dismissed with prejudice; and
3. The state-law claim is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 12, 2018

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court